W. C. KELLEY vs. ADDIE P. HANES, Appellee.—(A. W. ASKINS, Appellant.)

*Opinion filed February 19, 1909.*

1. BAILMENTS—*when pledgee of policies is entitled to insurance money.* Where insurance policies, which are the property of a partnership although standing in the name of one partner, are pledged to secure the pledgee against the loss of a note belonging to her and assigned by her to a bank as collateral security for the debts of the firm, the pledgee is entitled to the insurance money as against a person loaning money to one partner who gave a note purporting to be payable, as a first claim, out of his insurance.

2. PARTNERSHIP—*what does not show that partnership was dissolved.* Testimony by one partner that the partnership had been dissolved at a certain time is without force, where it appears not only from his conduct in carrying on the business without any change in the firm name, or otherwise, but also from written evidence made by himself, that there was, in fact, no dissolution.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Shelby county; the Hon. TRUMAN E. AMES, Judge, presiding.

R. M. PEADRO, for appellant.

GEORGE B. RHOADS, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

William C. Kelley, an attorney at law of Shelby county, having collected $1250 upon the compromise of claims under four insurance policies on an elevator at Tower Hill, against which he had a charge of $100 for his fees, leaving a balance of $1150, which was claimed by the appellant, A. W. Askins, and the appellee, Addie P. Hanes, filed his bill of interpleader in the circuit court praying that said appellant and appellee be required to interplead and exhibit

their respective claims to the money. The parties entered their appearances and admitted that the interpleader was proper. Askins claimed the money by reason of a promissory note for $1500, dated October 26, 1905, made by C. R. Barton, in whose name the insurance policies stood, upon which note was written, "This note is to be paid out of my insurance before any other claims are paid." Mrs. Hanes claimed the money on the grounds that C. R. Barton and her son, H. H. Price, were partners under the name of Barton-Price Company, owning the property at Tower Hill covered by the policies; that the firm obtained from her a note for $5000, to be placed in the First National Bank at Louisville, Kentucky, as collateral for firm indebtedness; that the insurance policies were placed in her hands to secure her, and she held them until Barton turned them over to Kelley for suit, the proceeds to be held by Kelley for her benefit until the $5000 note should be returned; that she had to pay $3500 to the bank to release her $5000 note, and that under the agreement she was entitled to the proceeds of the policies. The court heard the evidence of the parties and entered a decree finding that the money belonged to Askins and ordering Kelley to pay the same to him after deducting expenses of Kelley agreed upon, leaving the sum of $1117 for Askins. From that decree Addie P. Hanes prosecuted an appeal to the Appellate Court for the Third District, and that court reversed the decree and remanded the cause to the circuit court of Shelby county, with directions to enter a decree directing Kelley to pay the money to her. From the judgment of the Appellate Court Askins prosecuted this appeal.

The following facts appeared from the evidence: In October, 1901, C. R. Barton and Hollis H. Price formed a partnership under the name of Barton-Price Company, to buy, ship and sell hay and grain. Their principal office was in Louisville, Kentucky, but they purchased hay at various places in the north and shipped it to numerous points

throughout the southern States. Price took charge of the business and warehouse at Louisville and Barton traveled through the northern territory buying hay and making contracts. In October, 1904, the firm purchased a grain elevator at Tower Hill, Illinois, and the business at that place was conducted under the name of the Tower Hill Elevator Company, and Barton managed the business at that point in addition to buying hay around the country. The elevator was bought from Clegg & Bullington and was insured in their name and the policies of insurance were assigned to Barton, and he afterward procured another policy in his own name. While Price had charge at Louisville and Barton at Tower Hill, each went to the other place at times. On December 5, 1904, Price, at the suggestion of Barton, had a contract in duplicate drawn by an attorney in Louisville. This contract provided that the partnership was then dissolved; that Barton transferred to Price all Louisville business, giving Price the right to continue it under the name of Barton-Price Company but releasing Barton from all liabilities; that Price transferred to Barton the Tower Hill property and business, to be conducted by Barton in his own name; that Barton was to receive $500, to be paid with the delivery of the contract, and $1000 as a final payment on December 31, 1904, and that Barton assumed all Tower Hill liabilities and Price all Louisville liabilities. Price signed the duplicates and mailed them to Barton, telling him that if the terms were satisfactory he should sign them and return one. Whether Barton ever signed them and returned one is the principal matter of fact in controversy. After the contract was written and mailed to Barton the business at Louisville was carried on under the same name of Barton-Price Company and apparently in the same manner as before. Barton was in Louisville attending to business of the firm in the same manner as before, and Price continued to make trips to Tower Hill and signed checks in the name of the Tower Hill Elevator Company

the same as before. On February 12, 1905, the elevator at Tower Hill was destroyed by fire, but the business was continued in another building and in the same way.

The firm did business at Louisville with the First National Bank of that place, and on July 21, 1905, a note for $5000 owned by Addie P. Hanes, mother of Hollis H. Price, and the mortgage securing the same, were assigned to the bank as collateral security for debts of Barton-Price Company and to secure further advances. The firm had been accustomed to receive rebates from railroad companies in shipping their hay, and soon after the assignment of the note and mortgage the firm and the members, and a railroad man named Wells, were indicted by the Federal grand jury for allowing and receiving rebates. Price and Wells, who were in Louisville, were arrested and put in jail. Mrs. Hanes went to Louisville and borrowed $3000 and secured bail for her son. On her return she borrowed $3000 from a bank in Decatur, Illinois, with her husband as surety, and sent it to the Louisville bank. The surety for Price and Wells surrendered them and Mrs. Hanes again secured bail. Price pleaded guilty to the indictment and was fined $1000, which was paid out of the money deposited to secure the bail and the rest of the money was given back to Mrs. Hanes. After the assignment of the note and mortgage Mrs. Hanes and a man named Harrison, who had some connection with the firm, went to Tower Hill and appealed to Barton to do something to enable Mrs. Hanes to withdraw her note and mortgage. The insurance policies were then in Kelley's hands for collection and Barton delivered them to Mrs. Hanes on August 12, 1905, describing himself in a paper signed by him "as surety and partner in the firm of Barton-Price Company." By the paper he transferred the four policies to the use of the firm and authorized Harrison to use and hold them as firm collateral until November 1, 1905. The bank refused to accept an assignment of the policies executed by Harrison, and on

September 5, 1905, re-assigned them and the policies were returned to Tower Hill. On October 26, 1905, Barton took the policies to Findlay, Illinois, and borrowed of Askins some money, which, with previous indebtedness and a commission of three per cent, amounted to $1500, and gave his note payable in three months, with the following memorandum written on the face: "This note is to be paid out of my insurance before any other claims are paid." The policies were not assigned or delivered to Askins but were retained by Barton, who returned them to Kelley. Mrs. Hanes continued her efforts with Barton to induce him to attend to the firm matters so that she could get her $5000 note. Kelley refused to surrender the policies until he had an order from Barton, and on November 14, 1905, Barton gave Kelley an order to turn the policies over to Mrs. Hanes, stating that she promised to return them in two weeks. Kelley delivered the policies to Mrs. Hanes, who retained them until January 18, 1906, when she went to Tower Hill and Barton made the following agreement concerning them:

"TOWER HILL, ILL., *Jan. 18, 1906.*
"Mr. W. C. Kelley, Attorney, Shelbyville, Illinois:
"DEAR SIR—This is authority to bring suit on policies on burned elevator at Tower Hill, now in possession of Addie P. Hanes, as you deem fit and advisable. This suit to be brought in the name of the party or parties named on the policy, and you as assignee of funds collected to be held on trust for Addie P. Hanes until one note for $5000 held on trust by the First National Bank of Louisville for Barton-Price & Co. is returned to Addie P. Hanes. If said note for $5000 is returned at a time prior to the time of the collection of the above policies, Addie P. Hanes shall not be further known in the foregoing consideration.
                                        C. R. BARTON."

Mrs. Hanes then delivered the policies to Kelley and he brought the suits, which were compromised by the payment of $1250, and Kelley's fees were $100. Neither Mrs. Hanes nor Kelley knew that Askins claimed to have any right to the money, but Askins appeared with an order

dated March 17, 1906, signed by Barton, directing Kelley to pay the amount of the insurance to Askins on the note. There was due to the Louisville bank $4225.69 by Barton-Price Company and the bank held the $5000 note and mortgage and accounts due the firm, amounting to $1001.81, as collateral security. Afterward $265 was collected on the firm accounts and remitted to Mrs. Hanes.

Mrs. Hanes pledged her note and mortgage for $5000 as collateral to secure debts of the firm and advances to it, and was wholly ignorant of any change in the firm, if there had been one. The business was carried on in the same way that it had been for several years and under the same firm name. There was no indication that the firm had been dissolved, and if it had been, no one knew it except the partners themselves. The alleged contract of dissolution itself provided that Barton's name should continue to be used at Louisville, and if the contract was executed he was still held out as a partner there in pursuance of its terms. It is not necessary, however, to decide what the rights of the parties would be if there had been an actual dissolution, for the reason that the evidence clearly shows that there was none. Price testified that he mailed the contract in duplicate to Barton, who refused to accept the contract or the terms provided in it and did not return one of the duplicates. Price testified that he never knew that Barton had signed the contract until it was produced by Barton as a witness on the trial. Price was corroborated in his testimony by all the facts and circumstances. Barton admitted that Price came to Tower Hill long after the supposed dissolution and drew checks signed with the name of the Tower Hill Elevator Company, and acted apparently as a member of the firm the same as before. Barton was about the warehouse at Louisville attending to the business, and his only explanation was, that when he was idle Price requested him to come to Louisville and grade hay for him, and that he did so, and also loaded hay for Price at his

request at or near Tower Hill. The testimony given by Barton is inconsistent and irreconcilable, not only with his conduct but with written evidence made by himself. Among other evidence contradicting his testimony he wrote to Price from Tower Hill on February 12, 1905, the morning after the fire, telling of the loss of the elevator as their misfortune, and saying that their loss was going to be heavy; that they had only $3300 insurance, and that Price should not give himself any worry and they would have to stand it. In the assignment of August 12, 1905, Barton described himself, as before stated, as a partner in the firm. On November 10, 1905, he wrote to Price about a loss they had suffered on a Cairo deal and referred throughout the letter to their business as a firm. On November 13, 1905, he wrote to Price that people were coming to him and saying that Price owned part of the business at Tower Hill, and it would never do to be known there that they were both interested in that business. On April 9, 1906, he wrote to Price giving the amounts of debts of the Tower Hill business and persons to whom they were due, and said that what bills were due in Louisville would be added to that amount. He included among debts listed as firm debts the $1000 fine paid by Price. In the face of these written statements of Barton, his assertion as a witness that the firm was dissolved and that the note and mortgage of Mrs. Hanes were collateral to the individual debts of her son must go for naught. A finding that the firm was dissolved and that Barton was no longer a member could not be justified either in fact or law, and the Appellate Court reached the correct conclusion. The policies in Barton's name were the property of the firm, and they were pledged to secure Mrs. Hanes against loss by the assignment of her note and mortgage as collateral for the firm.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*